IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| API AMERICAS INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-02617-CM-GLR |
| ) | |
| v. ) | |
| ) | |
| PAUL W. MILLER, ) | |
| ) | |
| Defendant. ) | |

**TEMPORARY RESTRAINING ORDER**

This matter comes before the Court on the Application for Temporary Restraining Order (Doc. 5) ("Application") filed by Plaintiff, API Americas Inc. f/k/a API Universal Foils Inc. f/k/a API Foils, Inc. ("API"). API seeks to enjoin and restrain Defendant, Paul W. Miller ("Miller") from using (and further requiring him to return) the trade secrets and other confidential and proprietary information that he allegedly took from API; cease and desist from contacting and soliciting API's customers, most notably Hallmark Cards Incorporated ("Hallmark"); and cease and desist any employment or other competition with API, most notably his alleged employment with and work for UNIVACCO Foils Corporation ("Univacco") (allegedly a direct competitor of API); unless and until specifically permitted to do otherwise by further Order of this Court after due consideration and rulings on API's request for preliminary injunction.

After due consideration of the Application (Doc. 5) and Verified Complaint (Doc. 1) ("Complaint"), and being duly advised in the premises, the Court **grants** *Plaintiff's Application for Temporary Restraining Order* [Doc. 5] and finds, concludes, and orders as follows:

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. Fed. R. Civ. P. 65 ("Rule 65"), 18 U.S.C. § 1836(b), K.S.A. 60-3321, and 18 U.S.C. § 1030(g) provide for a restraining order with or without notice.

3.      Prior to entry of this Temporary Restraining Order, API, on October 24, 2017, provided advance notice to Miller, via email to his personal account, of API's intent to seek the instant Temporary Restraining Order. In particular, API advised Miller that "we will be asking the Court to immediately enter a Temporary Restraining Order, requesting the injunctive relief set forth in our Verified Complaint," that "time is of the essence," and that "[i]f we do not hear from you promptly, we will assume that you have no objection to our above request and will look for your Answer to our Verified Complaint in due course." API also provided a copy of the Complaint via the same manner.

4.      On October 25, 2017, this Court entered an Order requiring, in part, that "Defendant Paul W. Miller must file any Response on or before close of business (5:00 PM) on 10/30/2017." Doc. 6. Later that same day, API filed a Notice of Court Order and Hearing on Plaintiff's Application for Temporary Restraining Order (Doc. 7), which specifically states, in part, that "Defendant Paul W. Miller must file any response to the Application [for Temporary Restraining Order (Doc. 5)] on or before 5:00 P.M. on October 30, 2017." API's counsel emailed a copy of this Notice (Doc. 7) to Miller on October 25, 2017.

5.      On October 26, 2017, Miller was personally served with, *inter alia*, a copy of the Summons, Verified Complaint, Application for Temporary Restraining Order, and Notice (with exhibits thereto).

6.      Miller did not file any response to the Application for Temporary Restraining Order by October 30, 2017 as required by this Court's Order (Doc. 6).

7.      Because API provided advance notice to Miller, the requirements of Rule 65(b) for issuing a restraining order without notice are inapplicable.

-2-

8.      Thus, Rule 65, 18 U.S.C. § 1836(b), K.S.A. 60-3321, and 18 U.S.C. § 1030(g), individually and collectively, permit this Court to issue a temporary restraining order without bond to preserve the status quo until further Order of the Court.[1] The issuance of a restraining order is a matter for the sound discretion of the Court.[2]

9.      Miller is an individual residing in Johnson County, Kansas.

10.     API is a corporation organized, existing, and in good standing under the laws of the State of Delaware. API is registered and in good standing to do business in both Kansas and New Jersey.

11.     API is in the business of designing, manufacturing, and distributing hot stamping foils and other products. API asserts that its business depends on its unique technology, manufacturing processes, marketing strategies, customer and prospective customer relationships, and its business models and strategies.

12.     API asserts that Miller started working for API in June 2007 as a Customer Service Representative, and that over the years, was promoted to Customer Service Manager and then Technical Service and Account Manager. API further states that in his role as a Technical Service and Account Manager, Miller's major job duties and responsibilities included, without limitation, supporting API's customers, sales, and CSR groups with technical knowledge on how foil is applied on all types of application equipment; supporting the sale of API's laminates; managing the outflow and follow up of trial samples to customers; evaluating and reviewing complaint material and forwarding to the technical department for evaluation and any necessary follow up; assisting in API's activities at all customer trade shows; assisting manufacturing in

---

[1] *Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1241 (D. Kan. 2008) (a restraining order preserves the status quo until the hearing is held for the preliminary injunction, the status quo being "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing").

[2] *Equimed, Inc. v. Genstler*, 925 F. Supp. 710, 716 (D. Kan. 1996).

product quality control and quality assurance of products; ensuring the product recommended would perform as expected and provide the know-how so as to consult with the customer; and managing the outflow of trial samples to customers. In particular, API asserts that it entrusted Miller as its Account Manager for Hallmark effective the Third Quarter of 2016.

13. API states that on July 6, 2011, Miller and API entered into a written Employee Confidentiality, Non-Solicitation and Non-Competition Agreement ("Agreement"), which is attached to both the Complaint and the Application as Exhibit 1, and which provides in part that Miller and API understand and agree that:

> [API] is in the business of designing, manufacturing and distributing hot stamping foils and other products, that [API's] business depends on its unique technology, manufacturing processes, marketing strategies, customer and prospective customer relationships, and products, potential products and its business models and strategies;
>
> * * *
>
> [API] spends substantial time, money and effort in identifying its customers, learning their business needs, and designing manufacturing and distributing products to meet those needs;
>
> * * *
>
> [API] is engaged in the hot stamping foils business on a nationwide basis and has and solicits customers throughout the United States; and
>
> * * *
>
> through employment with [API] [Miller] will gain valuable information and knowledge concerning [API's] business and the business of [API's] customers and that if [Miller] were to compete with [API] in its business through the use of that information and knowledge, [API] would be severely and irreparably injured[.]

Doc. 1-1, at p. 1.

14. API asserts that Miller "knowingly and voluntarily agree[d] to the terms and conditions of this Agreement." Doc. 1-1, at p. 5.

15. API states that Miller voluntarily and unexpectedly resigned in September 2017, and that during his employment with API, Miller acquired significant confidential and proprietary information and trade secrets of API, including but not limited to API's product formulations/recipes, pricing, quality control, and other strategies with its customers. Because of the confidential and proprietary information that Miller was privy to in light of his employment with API, API asserts, Miller was subject to the Agreement which prohibits, among other things: (a) the use or disclosure of confidential and proprietary information for Miller's own benefit or the benefit of third parties; (b) employment with a direct competitor (as specifically defined in the Agreement); or (c) solicitation of an existing customer.

16. API asserts that it has recently learned that prior to Miller's departure from API that he downloaded and emailed certain of API's trade secrets and other confidential and proprietary information to his personal email account. API further states that it has also learned that Miller is now employed by Univacco, a direct competitor of API, as its Midwest Sales Manager, working in the very same territory that he did with API, and calling on one of API's largest customers in that area, Hallmark, for whom API had entrusted Miller to serve as its Account Manager.

17. API states that as an example of how key Hallmark is as a customer to API, that API opened a facility in Lawrence, Kansas several years ago for the benefit of Hallmark.

18. API asserts that Miller's transfer of trade secrets and confidential and proprietary information to his personal email for his own personal benefit and/or the benefit of his new employer, Univacco, coupled with the fact that he is now employed by a direct competitor of API (all actions which API claims are in breach of Miller's Agreement and/or applicable law), jeopardizes API's business contract and relationship with its biggest foil customer, Hallmark.

28313933v1

API further asserts that Miller, in direct violation of his Agreement with API, has been and is actively soliciting Hallmark to end its relationship with API and join Univacco, specifically including a recent (on or about October 16, 2017) presentation and testing on Univacco's behalf to Hallmark representatives at their facility in Lawrence, Kansas.

19. Upon learning this information, API states that it wrote to Miller (along with his new employer, Univacco, by separate letter) on October 18, 2017, requesting written assurances that he was not violating his contractual agreements with API, specifically including his covenants not to compete with API (such as by accepting employment with Univacco) or to solicit API's existing customers (like Hallmark). API states that copies of these letters are attached to both the Complaint and the Application as Exhibits 3 and 4, respectively. API asserts that as of its filing of the Application, neither Miller nor Univacco responded.

20. API states that Miller has already expressly agreed and acknowledged that if he violated "any of the[] [non-competition *or* non-solicitation] covenants" in the Agreement that it "will result in immediate, irreparable and substantial harm to [API] and its business." Doc. 1-1, at § 3(c). Further, API states that Miller expressly agreed that "[API] is entitled to preliminary and permanent injunctive relief and any other remedies which are available to enforce these covenants." Doc. 1-1, at § 3(c). API asserts that covenants not to compete are valid and enforceable where they are "reasonable under the circumstances and not adverse to the public welfare."[3]

21. API further asserts that even without Miller's binding contractual admissions, this Court has also recognized these principles: "The loss of customers and sales and the threat of the continuation of such loss to a legitimate business interest is sufficient to show that a plaintiff will

---

[3] *Weber v. Tillman*, 913 P.2d 84, 89 (Kan. 1996).

suffer irreparable injury unless protected by the court."[4] "Plaintiff's evidence is sufficient to show that absent preliminary injunctive relief, it is likely to suffer some irreparable harm in the form of lost customers, loss of goodwill, and unfair competition by the defendant, prior to any determination on the merits of the claims."[5] "Plaintiff's evidence of harm goes beyond speculation and cannot be adequately measured in damages."[6]

22. Therefore, API maintains, particularly in light of Miller's alleged breach of the non-competition covenants by working for Univacco and his alleged breach of the non-solicitation covenants by contacting and soliciting Hallmark in an attempt to lieu Hallmark away from API and into his new customer portfolio with Univacco, that API faces immediate and irreparable harm that cannot be remedied with an adequate remedy at law.

23. API further asserts that given the severe injury that Miller allegedly threatens to inflict on API if not enjoined (such as soliciting API's leading foil customer to a direct competitor, all while using API's trade secrets and proprietary information that he misappropriated from API, as just one example), that the threated injury to API outweighs whatever damage the TRO might cause to Miller, all of which, API claims, Miller has created and inflicted upon himself.

24. API further states that Miller also knowingly and voluntarily agreed that the non-competition and non-solicitation covenants "are reasonable and necessary to protect the legitimate interests of" API."[7] API further claims that applicable law is in accord, such that

---

[4] *Oldham Graphic Supply, Inc. v. Cornwell*, No. 09-1250-WEB-KMH, 2009 U.S. Dist. LEXIS 85214, at *41–42 (D. Kan. Sep. 17, 2009).

[5] *Id.*

[6] *Id.*

[7] Doc. 1-1, at § 3(c) & p. 5.

employers have a protectable interest in, among other things, their "trade secrets, confidential business information and customer relationships."[8]

25. API further claims that the requested Temporary Restraining Order will promote the public interest, rather than somehow adversely affect it, in part because this Court has recognized that "'[a]lthough restrictive provisions in contracts of employment must be reasonable and not such as to contravene the public welfare, the paramount public policy is that freedom to contract is not to be interfered with lightly.'"[9] API further points to this Court's observation that "Kansas courts have made it clear that freedom to contract is paramount public policy," which supports a finding of enforcing the covenants.[10]

26. API claims that it is likely to ultimately succeed on the merits in light of Miller's alleged breach of the restrictive covenants in the Agreement (set forth in Counts I–III of the Complaint), and further, his alleged violations of the federal Defend Trade Secrets Act (Count V), Kansas Uniform Trade Secrets Act (Count VI), and federal Computer Fraud and Abuse Act (Count VII). In particular, API asserts that Miller violated, and continues to violate, these federal and state laws by, among other things, misappropriating and continuing to use API's trade secrets and other confidential and proprietary information.

27. According to API, as further stated in Count I of the Complaint, Miller removed API's trade secrets and other confidential and proprietary information from API's premises without API's consent, thus violating Section 1(c) of the Agreement and entitling API to

---

[8] *Coskey's Television & Radio Sales and Service, Inc. v. Foti*, 602 A.2d 789, 794 (N.J. Super. Ct. App. Div. 1992); *Oldham Graphic Supply, Inc. v. Cornwell*, No. 09-1250-WEB-KMH, 2009 U.S. Dist. LEXIS 85214, at *41–42 (D. Kan. Sep. 17, 2009) ("The loss of customers and sales and the threat of the continuation of such loss to a legitimate business interest is sufficient to show that a plaintiff will suffer irreparable injury unless protected by the court.").

[9] *Digital Ally, Inc. v. Corum*, No. 17-cv-02026-DDC-GLR, 2017 U.S. Dist. LEXIS 65094, at *30 (D. Kan. Apr. 28, 2017) (quoting *Weber v. Tillman*, 913 P.2d 84 (Kan. 1996)).

[10] *Id.*

injunctive relief. API further asserts that Miller has refused to return this information to API, further breaching Section 1(c). API asserts, upon information and belief, that Miller has used, and continues to use, this information in breach of his non-disclosure covenants and for his own direct personal gain and benefit, and likely the direct or indirect gain and benefit of API's direct competitor (and Miller's new employer), all to the severe detriment of API.

28. API asserts, for reasons further articulated in Count II, that Miller has also breached his non-competition covenants by accepting a position with Univacco and working as its Midwest Sales Manager, working in the very same territory that he did with API, and calling on one of API's largest customers in that area, Hallmark, for whom API had entrusted Miller to serve as the Account Manager.

29. Additionally, API asserts, for reasons further stated in Count III, that Miller has also breached his non-solicitation covenants, such as by actively contacting, recruiting, providing testing and demonstrations for, and soliciting API's leading customer, Hallmark, on behalf of API's direct competitor Univacco.

30. Lastly, according to API, emergency relief is necessary here because without entry of a Temporary Restraining Order that API will face immediate and irreparable harm due to Miller's own knowing, deliberate, and unlawful actions, and that there is not sufficient time to wait for a hearing on the issue. Rather, as API continues to claim, API's existing customer, Hallmark, is in its final stages of awarding its foil business and may make its decision at any moment. According to API, Miller, in direct violation of applicable law and his contractual agreements, is currently actively engaged with API's direct competitor Univacco in working to solicit Hallmark's foil business away from API (and to his new employer Univacco). API states that delaying entry of the Temporary Restraining Order for any reason would enable Miller to

continue his alleged unlawful competition, solicitation, and disclosure of API's trade secrets and other proprietary information that he misappropriated from API before he left. If allowed to continue, API claims, especially if he succeeds in soliciting Hallmark, API asserts that it will be left irreparably harmed and without adequate remedy at law, as it would be impossible to calculate monetary damages. Therefore, API requests entry of a Temporary Restraining Order immediately to temporarily enjoin and restrain Miller, with a preliminary injunction hearing set when reasonably practical.

31.     Allowing Miller to continue with the actions and conduct indicated above may result in immediate irreparable harm to API, specifically including an inability to obtain monetary relief due to the reasons that API has stated.

32.     API may therefore suffer irreparable injury and harm from Miller's actions should a restraining order not immediately issue enjoining and restraining Miller from the conduct that API has identified, as specifically enjoined below, unless and until specifically permitted to do otherwise by further Order of this Court after due consideration and rulings on API's request for preliminary injunction.

33.     Any harm that Miller may allegedly incur as a result of the requested injunctive relief is outweighed by the harm to API and/or the public or others should a restraining order not issue.

34.     Injunctive relief is not adverse to the public interest.

35.     The requested Temporary Restraining Order must be granted to avoid immediate irreparable injury, loss, and damage to API.

WHEREUPON, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant, Paul W. Miller ("Miller"), is enjoined and restrained from:

(i) Disclosing, using, or providing any trade secrets or confidential or proprietary documents or information of API (including without limitation the Confidential Documents or Confidential Information as defined and identified in the Agreement), directly or indirectly, to anyone (except for the return of such documents, information, or trade secrets directly to API) and/or for his own benefit or for the benefit of any third party; *and further*, requiring Miller to immediately return any and all such documents, information, and trade secrets (in whatever form, including without limitation copies, notes, drawings, video/audio tapes, and computer programs, disks, and duplicated information) directly to API; (all as provided at § 1(b)–(c) of the Agreement);

(ii) Competing in any way, directly or indirectly, with API in the hot stamping foils business or any other business or aspect of API's business in which API engaged during Miller's employment until a hearing on the preliminary injunction; *and further*, from consulting with, providing services to, being employed by, or having any interest in any business, firm, partnership, corporation, or other entity, whether as employee, officer, director, agent, security holder, creditor, consultant, independent contractor or otherwise, which competes in any way, directly or indirectly with API in the hot stamping foils business or in any aspect of API's business; *which specifically includes* from working with API's direct competitor Univacco, and/or competing with API by soliciting or interacting with API's existing client Hallmark until a full and complete hearing on the preliminary injunction; (all as provided at § 2(c) of the Agreement); and

(iii) Directly or indirectly contacting, inducing, enticing or in any way attempting to solicit the hot stamping foils business of any of API's customers or Prospective Customers (with a "Prospective Customer" defined as "any entity or individual for which [API] has invested time, money and effort in soliciting as a customer during [Miller's] employment") until a full and complete hearing on the preliminary injunction; *and further*, from directly or indirectly inducing, enticing, soliciting, or hiring or attempting to solicit, hire or employ any employee of API; *which specifically includes* from contacting, communicating, inducing enticing, or in any way attempting to solicit API's existing customer Hallmark until a full hearing on the preliminary injunction; (all as provided at § 3(a)–(b) of the Agreement).

IT IS FURTHER ORDERED that this Temporary Restraining Order issue without bond, pursuant to Fed. R. Civ. P. 65, subject to further Order of this Court.

28313933v1

IT IS FURTHER ORDERED that this Temporary Restraining Order shall remain in full force and effect until further Order of this Court expressly modifying or lifting this Temporary Restraining Order.

IT IS SO ORDERED.

Dated this 6TH day of NOVEMBER, 2017 at Kansas City, KS.

/s/ Carlos Murguia
Hon. Carlos Murguia,
United States District Judge

Submitted by:

LATHROP GAGE LLP

By: /s/ Jennifer M. Hannah
Jennifer M. Hannah, KS #19111
jhannah@lathropgage.com
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
Telephone: (816) 292-2000
Telecopier: (816) 292-2001

Mark A. Samsel, KS #24551
msamsel@lathropgage.com
10851 Mastin Blvd., Suite 1000
Overland Park, Kansas 66210-1669
Telephone: (913) 451-5100
Telecopier: (913) 451-0875

ATTORNEYS FOR PLAINTIFF

APPROVED AS TO FORM BY:

By: /s/ Curtis N. Holmes
Curtis N. Holmes, KS #23434
curtisholmes@holmeslawofficellc.com
115 South Kansas Avenue
Olathe, KS 66061
Telephone: (913) 815-8369
Facsimile: (913) 780-9500

ATTORNEYS FOR DEFENDANT

28313933v1