**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

API AMERICAS INC.,           )

                    )

            Plaintiff      )     Case No. 17-CV-02617-CM-GLR

v.                       )

                    )

PAUL W. MILLER,        )

                    )

           Defendant.    )

_____)

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT</u>**

COMES NOW, Defendant, Paul W. Miller, by and through counsel, Richard W. Martin, Jr., and pursuant to Fed. R. Civ. Pro 56 and U.S. District Court of Kansas local Rule 56.1, hereby submits this memorandum in support of Defendant's motion for summary judgment.

<u>UNCONTROVERTED STATEMENT OF MATERIAL FACTS</u>

1.      Plaintiff ("API") permitted Defendant ("Miller") to work from home during his employment with Plaintiff.  His employment with Plaintiff was employment-at-will.  He could quit at any time and, in fact, did so.  (Miller Affidavit, Defendant's Exhibit 1, ¶ 3.)

2.      During his employment with API, Miller corresponded with Plaintiff about Confidential Information and Documents while working from home.  They sent such information and documents back and forth and Miller frequently did so using his home or private email account.  Plaintiff was fully aware of this arrangement and permitted it.  (Exhibit 1, ¶ 4.)

3.      Miller did not solicit API's existing or prospective customers away from API. (Exhibit 1, ¶ 5.)

4.      API suffered no actual damages as a result of any misconduct that API alleges

against Miller in this case.  (Exhibit 1, ¶ 6.)

5.      Prior to quitting his employment with Plaintiff, Miller became aware that the performance of Plaintiff's products, specifically foil, was unsatisfactory, that is, in regard to the products provided by Plaintiff to Hallmark.  (Exhibit 1, ¶ 7.)

6.      Miller did not misappropriate or threaten to misappropriate Plaintiff's trade secrets.  Miller never acted willfully or maliciously toward Plaintiff in this regard.  (Exhibit 1, ¶ 8.)

7.      Miller was not unjustly enriched by any materials that Plaintiff alleged in this case that Miller took.  Miller made no profit from them.  (Exhibit 1, ¶ 9.)

8.      Miller did not exceed his authorization to access API's computer's network, webpage, email, company-provided cell phone/and or electronically stored information.  (Exhibit 1, ¶ 10.)

9.      Miller did not obtain information from protected company-owned (by API) computers.  (Exhibit 1, ¶ 11.)

10.      At no time did Miller have any intent to defraud API or exceed his authority to access protected computers or obtain confidential and/or proprietary information.  (Exhibit 1, ¶ 12.)

11.      Miller did not convert or transfer any confidential or proprietary information for his use or for the use of any third party.  (Exhibit 1, ¶ 13.)

12.      At the time that Miller quit his employment with API, API did not have a binding and enforceable contract with Hallmark.  Hallmark was free to buy foils from other suppliers. (Exhibit 1, ¶ 14.)

13.     Hallmark did not breach any contract with API.  (Exhibit 1, ¶ 15.)

14.     API lost no business with Hallmark as a result of any misconduct that Plaintiff alleges against Miller in this case. (Exhibit 1, ¶ 16.)

15.     Miller had no malice against API in his dealings with Hallmark or Univacco. (Exhibit 1, ¶ 17.)

16.     API sustained no consequential damages incurred because of an interruption of services resulting from any misconduct that API alleges against Miller in this case.  (Exhibit 1, ¶ 18.)

17.     None of the wrongful conduct that API alleged against Miller in this case involved a computer that is used in interstate commerce.  (Exhibit 1, ¶ 19.)

18.     None of the wrongful conduct that API alleged against Miller in this case involved interstate commerce.  (Exhibit 1, ¶ 20.)

19.     Miller has received no proceeds from any alleged misappropriation of API materials.  (Exhibit 1, ¶ 21.)

20.     Miller did not cause a breach of contract between Hallmark and API. (Exhibit 1, ¶ 22.)

21.     There has been no breach of contract between Hallmark and API.  (Exhibit 1, ¶ 23.)

22.     API's business with Hallmark continues to this day.  (Exhibit 1, ¶ 24.)

23.     Miller did not exclude API from the possession of any materials it alleged Miller took.  API had access to the same materials; they were electronic documents that Miller emailed to himself.  Furthermore, Miller "returned" all confidential and/or proprietary materials to API

after the Temporary Restraining Order was entered in this case.  (Exhibit 1, ¶ 25.)

<u>ARGUMENT AND AUTHORITIES</u>

**I.      PLAINTIFF SEEKS NO RECOVERY FOR ACTUAL DAMAGES AND HAS ABANDONED MOST OF ITS CLAIMS AND LEGAL THEORIES IN THIS CASE.**

Plaintiff is not seeking any actual damages in this case. It only seeks attorneys fees and punitive damages under the Defend Trade Secrets Act of 2016 ("DTSA"), the Kansas Uniform Trade Secrets Act ("KUTSA") and the Computer Fraud and Abuse Act ("CFAA").  (Pretrial Order § 5(b)&(c)).  Therefore, Plaintiff has abandoned its other claims and legal theories. Nevertheless, Defendant will address the substance of each theory in turn.

**II.     DEFEND TRADE SECRETS ACT OF 2016**

In a civil action under the Defend Trade Secrets Act of 2016, the only damages awards available are:

(i)(I) damages for actual loss caused by the misappropriation of the trade secret; and

(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or

(ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;

 18 U.S.C. 1836 (b)(3)(B).

In this case, none of these categories of damages are available to Plaintiff.  First, Plaintiff abandoned its claims for actual damages and is only seeking attorneys fees and exemplary

damages.  Second, Plaintiff has sustained no "damages for actual loss" pursuant to 18 U.S.C. 1836 (b)(3)(B)(i)(I).  (SOF ¶ 4.)  Third, Defendant incurred no "unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss." 18 U.S.C. 1836 (b)(3)(B)(i)(II); (SOF ¶ 7.)  Lastly, Miller received no proceeds from any alleged misappropriation; therefore, API is not entitled to a "royalty" from Miller due to any misappropriation of trade secrets.  18 U.S.C. 1836 (b)(3)(B)(ii); (SOF ¶ 19.)

Plaintiff is not entitled to exemplary damages because Miller did not "willfully and maliciously appropriate[]" any trade secrets.  (SOF ¶ 6, 15.)  Furthermore, because API has suffered no actual damages, there is no basis to calculate exemplary damages under this subsection.  18 U.S.C. 1836 (b)(3)(C).  Likewise, there is no basis under the Act for attorneys fees because Miller did not "willfully and maliciously" misappropriate trade secrets.  18 U.S.C. 1836 (b)(3)(D).

More importantly, however, Plaintiff cannot maintain an action under DTSA because no "trade secret is related to a product or service used in, or intended for use in, interstate commerce." 18 U.S.C. 1836 (b)(1).  (SOF ¶ 17, 18.)

## III.  COMPUTER FRAUD AND ABUSE ACT

"To establish a CFAA claim, [Plaintiff] must show that [Defendant] intentionally accessed a protected computer without authorization and, as a result, caused an annual loss of at least $5,000." *Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F.Supp.2d 574, 581 (2007), underline citing 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(a)(5)(A)(i)-(iii); 18 U.S.C. § 1030(a)(5)(B)(i).  In this case, API suffered no damages resulting from any actions of Defendant.

(SOF ¶ 4.)  Furthermore, API has abandoned its claim for actual damages under the CFAA.  For that reason alone Defendant is entitled to summary judgment on this claim.

Moreover, API has not suffered "loss" as defined by the Act.  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to the offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.*, citing 18 U.S.C. § 1030(e)(11) (emphasis added); see also *Nexans Wires S.A. v. Sark–USA, Inc*., 319 F.Supp.2d 468, 477–78 (S.D.N.Y.2004) (because § 1030(e)(11) limits "loss" to costs incurred because of interruption of service, loss of business due to defendant's use of proprietary information was not covered by the CFAA).

In this case, Plaintiff does not even allege that Defendant caused it to sustain consequential damages "because of interruption of service."  Furthermore, Defendant in fact, did not.  (SOF ¶ 16.)  Its claim for relief under the CFAA must be denied.

**Plaintiff does not allege that Defendant accessed a "protected computer," as defined in the Act, and therefore this Court does not have jurisdiction to proceed under the CFAA.** A "protected computer" is one that is used in interstate commerce.  18 U.S.C. § 1030(e)(2)(B). See also *Pine Environmental Services, LLC v. Carson*, 43 F.Supp.3d 71, 76 (2014) (where laptop was formerly used in interstate commerce but the "crime" is not interstate in nature, district court lacks subject matter jurisdiction under CFAA).  Miller did not obtain information from a protected company-owned (by API) computers.  He had authorization to use API computers and he did so when he obtained the materials about which API complains.  (SOF ¶ 8, 9.)

**The CFAA does not apply to misappropriation claims.** "[T]he plain language of the CFAA targets the unauthorized procurement or alteration of information, not its misuse or misappropriation." *Welenco, Inc. v. Corbell*, 126 F.Supp.3d 1154, 1168 (2015), quoting *United States v. Nosal*, 676 F. 3d 854, 859 (9th Cir. 2012). "The definition of 'loss' itself makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks." *Id.,* quoting *AtPac, Inc. v. Aptitude Solutions, Inc.,* 730 F.Supp.2d 1174, 1185 (E.D.Cal.2010). "Loss" under the act refers to "damages incurred because of interruption of service." 18 U.S.C. 1030(e)(11).

## IV.   KANSAS UNIFORM TRADE SECRETS ACT

**Plaintiff has sustained no damages as a result of any misappropriation under the KUTSA.** The categories of damages that may be recovered under the Kansas Uniform Trade Secrets Act are limited to: "the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." K.S.A. 60-3322(a).

Plaintiff has no damages in the form of actual loss caused by any misappropriation in this case. (SOF ¶ 4.) Defendant has not been unjustly enriched by any misappropriation. (SOF ¶ 7.) Defendant has received no proceeds from any misappropriation. (SOF ¶ 19.) Plaintiff therefore is not entitled to a "royalty for an unauthorized disclosure or use of a trade secret." K.S.A. 60-

3322(a).  Lastly, Plaintiff is not entitled to attorneys fees because no "willful and malicious misappropriation exists."  K.S.A. 60-3323 (iii); (SOF ¶ 6, 15.)

## V.      TORTIOUS INTERFERENCE CLAIMS

**Plaintiff's tortious interference claims are pre-empted by KUTSA.**

K.S.A. 60-3326 provides, in pertinent part:

> (a) Except as provided in subsection (b), this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret.(b) This act does not affect:(1) Contractual remedies, whether or not based upon misappropriation of a trade secret;(2) other civil remedies that are not based upon misappropriation of a trade secret; or(3) criminal remedies, whether or not based upon misappropriation of a trade secret.

*Id.* See also *Wolfe Elec., Inc. v. Duckworth*, 266 P.3d 516, 532 (2011) (Plaintiff's tortious interference claims are pre-empted by KUTSA).  In this case, Plaintiff's only contentions are that Defendant misappropriated trade secrets by emailing documents to himself and took employment with Plaintiff's direct competitor.  Plaintiff's tort claims rest on misappropriation of trade secrets and are preempted by KUTSA.

"The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom."  *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 168-169 (1994).  Additionally, Plaintiff must prove Defendant's malice.  *Id.* at 169, citing *Turner v. Halliburton Co.*, 240 Kan. at 1, 12 (1986).

"A claim for tortious interference with a contractual relationship requires the existence of a valid and enforceable contract at the time of the interference between the plaintiff and a third party." *Macke Laundry Service Ltd. Partnership v. Mission*, 19 Kan.App.2d 553, 561 (1994).  In this case, Plaintiff had no enforceable contract with Hallmark for Defendant to disrupt.  (SOF ¶ 12.)  Moreover, Defendant in fact did not cause a breach of the contract  (SOF ¶ 13.); Plaintiff does not even allege that a breach occurred ("[t]hough his actions, Miller *threatens to intentionally bring about the breach* of the above contract."  Verified Complaint ¶ 150, emphasis added.)  Plaintiff's business dealings with Hallmark continue to this day.  (SOF ¶ 22.)  Furthermore, Plaintiff has sustained no actual damages and is not seeking any damages except for attorneys fees and punitive damages under the DTSA, KUTSA and the CFAA.  (Pretrial Order § 5(b)&(c)).  Lastly, Miller acted without malice in his dealings with Hallmark and Univacco.  (SOF ¶ 15.)

To maintain its cause of action for tortious interference with a prospective business advantage, the plaintiff must establish:

"(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct." *Turner v. Halliburton Co.*, 240 Kan. 1, 12 (1986).

In this case, Plaintiff cannot show that but for the conduct of Defendant, Plaintiff was reasonably certain to have continued its business relationship with Hallmark. Prior to quitting his

employment with Plaintiff, Miller became aware that the performance of Plaintiff's products, specifically foil, was unsatisfactory, that is, in regard to the products provided by Plaintiff to Hallmark.  (SOF ¶ 5.)  Furthermore, it is stipulated by the parties that in "May of 2017, Hallmark notified API that it was seeking Request for Quote ("RFQ") proposals for its folio business, which API had previously provided."  (Pretrial Order, page 9, ¶ 29.)  It is stipulated by the parties that on "September 7, 2017, API presented Hallmark with a Quality Improvement Plan that Miller had helped prepare to address application issues with some of the foils."  (PTO, page 10, ¶ 36.)  It is stipulated by the parties that "on or about October 16, 2017, under Univacco's employ, Miller went to Hallmark's facility in Lawrence, Kansas to test Univacco's foils with Hallmark.  Miller produced a report for Univacco to provide to Hallmark."  (PTO, page 12, ¶ 46.)

Lastly, because the relationship between Plaintiff and Hallmark continues to this day, Plaintiff cannot show any damages.  Plaintiff is not seeking actual damages under this theory. (PTO, page 20, § 5(b)(c).)

## VI.   BREACH OF ONTRACT

API has sustained no actual damages under its breach of contract theories.  "One who claims damages on account of a breach of contract must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach." *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 50 (1974), <u>citing</u> *Johnston v. Lanter*, 98 Kan. 62, 65, 157 P. 266.  In this case, Plaintiff has sustained no damages resulting from any alleged breach of contract by Defendant.  (SOF ¶ 4.)   Indeed, it is not seeking damages except for attorneys fees and punitive damages under the DTSA, KUTSA and the CFAA.

(Pretrial Order § 5(b)&(c)).  Plaintiff's three counts of breach of contract (Counts 1-III) must be dismissed.

## VII.   IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

Under Kansas law, the implied duty of good faith and fair dealing is not an independent claim but a legal theory for breach of contract.  "Kansas courts imply a duty of good faith and fair dealing in every contract."  *St. Catherine Hosp. of Garden City v. Rodriguez*, 25 Kan.App.2d 763 (1998).  However, "employment at will contracts are excepted from the good faith obligation in Kansas." (*Id.* at 766.)  Defendant's employment with API was employment at will.  He was free to quit his employment at any time and in fact did so.  (SOF ¶ 1.)  Furthermore, as stated above, Plaintiff has sustained no damages resulting from any alleged breach of contract by Defendant.  Indeed, it is not seeking damages except for attorneys fees and and punitive damages under the DTSA, KUTSA and the CFAA.  (Pretrial Order § 5(b)&(c)).

## VIII.   TORT OF CONVERSION

"Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."  *Snider v. MidFirst Bank*, 42 Kan.App.2d 265, 270 (2009).  In this case, Defendant did not convert any materials as alleged by Plaintiff because he did not exclude Plaintiff from possession of any of those materials.  Plaintiff had access to the same materials as Defendant; they were copies of electronic documents that Defendant sent to himself by email. Moreover, Miller did not convert or transfer any confidential or proprietary information for his use or the use of any third party. (SOF ¶ 11.)  Furthermore, Miller returned all such materials to API after the entry of the temporary injunction in this case.  (SOF ¶ 23.)  Lastly, Plaintiff has sustained no damages

resulting from any alleged conversion by Defendant. Indeed, it is not seeking damages except for attorneys fees and punitive damages under the DTSA, KUTSA and the CFAA. (Pretrial Order § 5(b)&(c)).

## IX.    "ACCOUNTING"

Despite researching the matter, Defendant cannot find authority for cause of action under Kansas law for "accounting." Therefore, it should be dismissed for failure to state a claim upon which relief can be granted on that ground. Moreover, Plaintiff is not seeking damages under this claim, *supra*.

## X.    DEFENDANT'S WAIVER DEFENSE

API claims that Miller breached their contract and misappropriated Confidential Documents and Confidential information by emailing such documents to himself through his personal email account. However, API fully consented to this practice through its course of conduct with Miller. During his employment with API, Miller corresponded with Plaintiff about Confidential Information and Documents while working from home. They sent such information and documents back and forth and Miller frequently did so using his home or personal email account. Plaintiff was fully aware of this arrangement and permitted it. (SOF ¶ 2,) Accordingly, it has waived its complaint about this practice.

WHEREFORE, for all of the above reasons, and because there exists no genuine dispute as to any issue of material fact, Defendant Paul W. Miller is entitled to the entry of summary judgment in Defendant's favor on Counts I-X of Plaintiff's Verified Complaint.

Respectfully Submitted,

**/s/Richard W. Martin, Jr.**

_____

Richard W. Martin, Jr., KS # 22502
MARTIN & WALLENTINE, LLC
130 N. Cherry, Ste. 201
Olathe, KS 66061
Tel:      (913) 764-9700
Fax:      (913) 764-9701
rmartin@kc-attorney.com
*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 1st day of November, 2018, the foregoing

was electronically filed with the Clerk of the Court by using the CM/ECF system, which will

automatically forward an electronic copy to the following counsel of record:

Jennifer Hannah
Lathrop Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City,  MO  64108-2618
Direct: 913.451.5107 | Fax: 913.451.0875
jhannah@lathropgage.com
*Attorney for Plaintiff*

**s/Richard W. Martin, Jr.**

_____